UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------- x
RATNA PRABHAKAR, *pro se*, :
:
      -against- : **MEMORANDUM AND ORDER**
:
LIFE INSURANCE COMPANY OF NORTH : 09-cv-5530 (DLI) (VVP)
AMERICA, :
:
      Defendant. :
---------------------------------------------------------- x

**DORA L. IRIZARRY, United States District Judge:**

*Pro se* plaintiff, Ratna Prabhakar ("Plaintiff"), filed the instant action against defendant, Life Insurance Company of North America ("LINA"), pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), alleging that LINA improperly terminated her long term disability benefits. LINA filed the instant motion seeking summary judgment, pursuant to Fed. R. Civ. P. 56. Plaintiff opposed the motion. For the reasons set forth below, LINA's motion is denied.

BACKGROUND

**Facts**[1]

On December 12, 1989, Plaintiff injured her head, right leg and foot while working at State Farm Insurance Company ("State Farm"). (Pl.'s Aff. in Opp'n to Def.'s Mot. for S.J., Dkt. Entry 32 ("Pl.'s Opp'n"), 1; Def.'s Statement of Material Facts Pursuant to Local Civil Rule 56.1, Dkt. Entry 30 ("Def.'s 56.1 Statement"), ¶¶ 1, 4.) As a result of Plaintiff's injuries, she was diagnosed with, among other things, post-concussion syndrome with headaches, cognitive impairment and depression. (Pl.'s Opp'n Ex. A, 4.) In addition, Plaintiff was diagnosed with

---

[1] Unless otherwise stated, the facts described in this section are not in dispute.

"Organic Mental Disorder (NOS) secondary to concussion, affective type" and "Organic Mood Disorder." (*Id.*, Ex. B, 2-4.) It was determined that, as a result, Plaintiff was permanently disabled and unable to work. (*Id.*, Ex. A, 4; Ex. B, 4.)

As part of Plaintiff's employment with State Farm, she participated in an employee benefit plan, which included long-term disability coverage pursuant to a long-term disability policy issued by LINA to State Farm ("Policy"). (Def.'s 56.1 Statement ¶ 2.) Starting on March 17, 1991, LINA paid Plaintiff long-term disability benefits as a result of Plaintiff's inability work. (Pl.'s Opp'n 2; Def.'s 56.1 Statement ¶ 4.)

By letter dated July 17, 2003, LINA requested updated medical information from Plaintiff and her doctors to determine whether she remained completely disabled. (Def.'s 56.1 Statement ¶ 5.) In response to LINA's request, Dr. Ram Pradeshi, Plaintiff's psychiatrist, submitted a Psychiatric Functional Assessment form ("PFA form"). (Decl. of Emily A. Hayes in Supp. of LINA's Mot. for S.J., Dkt. Entry 31-2 ("Hayes Decl."), Ex. D LINA 141-44; Pl.'s Opp'n 3.) The PFA form stated that Plaintiff suffered from depression and bipolar disorder, and that she was unable to function in a work setting. (*Id.* LINA 141-42.) On October 29, 2003, Kathi Coon, a "Nurse Case Manager," sent a fax to Plaintiff and her son acknowledging LINA's receipt of the PFA form and explaining that "we did not receive any of the clinical information requested (progress notes from January 1, 2001 to present)." (*Id.* LINA 129.) The fax also stated that "[i]n order for us to make one last attempt to get these records from the Dr. [sic] we need a current release of information signed," and attached a medical release form for Plaintiff to sign. (*Id.* LINA 129-30.)

On November 10, 2003, LINA sent Plaintiff a letter explaining that "we have determined that the medical information on file at this time does not support that you continue to be totally

2

disabled from performing the material duties of your occupation or any occupation." (*Id.* LINA 126.) The letter also stated that, while Dr. Pradeshi completed the PFA form, he did not provide "clinical data," such as "office/treatment notes, to support the limitations and restrictions given." (*Id.*) LINA further explained in the letter that it had made three unsuccessful attempts to contact Dr. Pradeshi to discuss Plaintiff's case and, if LINA did not receive documentation showing Plaintiff was still disabled by December 10, 2003, then LINA would review Plaintiff's file to determine if further benefits were due. (*Id.*)

In a subsequent letter, dated December 23, 2003, LINA informed Plaintiff that it was terminating her disability benefits. (*Id.* LINA 108-10.) In the letter, LINA described the attempts it had made to obtain additional medical information from Plaintiff and Dr. Pradeshi and explained that, based on a review of Plaintiff's claim by LINA's in-house physician, "we have determined that we do not have medical records or test results to support current functional deficits that would preclude you from performing your occupation or any occupation." (*Id.* LINA 109.)

On June 16, 2004, LINA apparently received a call from a new doctor treating Plaintiff, Dr. Berger, requesting a letter describing the type of information LINA needed from Dr. Berger to evaluate Plaintiff's claim. (*Id.* LINA 90.) LINA responded by faxing a letter requesting "any records you have from January 1, 2002 and up to the present date that will support why [Plaintiff] is unable to work." (*Id.* 88.) LINA asserts that it never received a response from Dr. Berger. (Def.'s 56.1 Statement ¶ 13.)

By letter to LINA dated June 20, 2004, Plaintiff appealed the termination of her benefits. (Hayes Decl. Ex. D, LINA 101.) In the letter, Plaintiff argued, among other things, that LINA previously had not asked for doctor's notes as a condition for continued payment and that she

was unable to control Dr. Pradeshi's compliance with LINA's request for more information. (*Id*.) Plaintiff also stated that she recently had been hospitalized for her depression and was seeing a new social worker and psychiatrist. (*Id*.)

After LINA sent another letter warning Plaintiff that, if it did not receive any additional information by August 23, 2004, it was going to make a final determination (*See id.* LINA 86), Plaintiff submitted a letter to LINA attaching a letter from a social worker from Queens Village Community Services ("Queens Village"). (*Id.* LINA 83-85.) The social worker explained in her letter that Plaintiff was admitted to the clinic as an out-patient on June 15, 2004, that Plaintiff is receiving psychiatric treatment and Plaintiff is unable to work. (*Id.* LINA 85.) Plaintiff's cover letter said that Queens Village had faxed the social worker's letter to LINA twice and gave LINA the telephone number of Plaintiff's new psychiatrist so that LINA could call to discuss Plaintiff's condition. (*Id.* LINA 83.) LINA responded with a letter, dated August 24, 2004, to Plaintiff explaining that, while it received the letter from Queens Village, LINA still had not received any medical records, including any record of Plaintiff's recent hospitalization, and warned Plaintiff that LINA must receive any records by September 3, 2004. (*Id.* LINA 81.) After LINA apparently did not receive any new materials, by letter dated September 9, 2004, LINA denied Plaintiff's appeal. (*Id.* LINA 79-80.)

LINA subsequently received Plaintiff's treatment notes from Queens Village describing Plaintiff's psychiatric issues following her admittance in June 2004. (*See id.* LINA 67-77.) Plaintiff once again appealed her termination by letter dated January 3, 2005. (*See id.* LINA 53-65.) Attached to her letter appeal, Plaintiff submitted medical records from her new psychiatrist, which dated back to June 15, 2004. (*Id.* LINA 54-65.)

By letter dated March 10, 2005, LINA informed Plaintiff that it was reaffirming its decision to terminate Plaintiff's benefits, explaining that "we have no medical evidence to support Total Disability from your occupation on a continuous basis from December 21, 2003 forward." (*Id.* LINA 49-51.) In the letter, LINA acknowledged that it received records from Queens Village, but that these records were insufficient to reinstate Plaintiff's disability benefits because the records pertained to a period beginning six months after LINA terminated Plaintiff's benefits. (*Id.* LINA 50.) Finally, the letter advised Plaintiff that she had exhausted her administrative appeals and that LINA would not consider any further appeals. (*Id.* LINA 51.)

**Procedural History**

Plaintiff brought this action *pro se* on December 16, 2009, pursuant to ERISA, for reimbursement of all past disability payments, interest and costs, due to LINA's alleged violation of the Policy. (*See* Compl. ¶ 15.) LINA subsequently moved to dismiss, arguing that Plaintiff's claims were untimely because the Policy purported to contain a three-year limitations period for Plaintiff to bring a legal action, and Plaintiff waited four and a half years to bring this action following the final denial of Plaintiff's benefits. (*See* Mem. in Supp. of Mot. to Dismiss, Dkt. Entry 7.) This court denied LINA's motion, holding that there was a factual dispute as to whether the Policy contained a three-year limitation clause, as Plaintiff's proffered version of the Policy did not contain a limitations clause. *See Prabhakar v. Life Ins. Co. of N. Am.*, 2011 WL 844901 (E.D.N.Y. Mar. 8, 2011).

LINA now moves for summary judgment, contending that there is no genuine issue of material fact that: 1) LINA's termination of Plaintiff's disability benefits was in accordance with the Policy and 2) Plaintiff's claim is time-barred under the three-year limitations clause in the Policy. (*See* Def.'s Mem. of Law in Supp. of its Mot. for S.J., Dkt. Entry 31-28 ("Def.'s

Mem.").) Plaintiff opposes the motion, asserting that: 1) she provided sufficient evidence to LINA showing that she was continuously disabled and 2) her claims are not time-barred because the version of the Policy Plaintiff received from State Farm did not contain a three-year limitations clause. (*See* Pl.'s Opp'n.)[2]

## LEGAL STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The court must view all facts in the light most favorable to the nonmoving party, but "only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id*. A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The nonmoving party, however, may not rely on "[c]onclusory allegations, conjecture, and speculation," *Kerzer v. Kingly Mfg.,* 156 F. 3d 396, 400 (2d Cir. 1998), but must affirmatively "set out specific facts showing a genuine issue for trial," Fed. R. Civ. P. 56(e). "When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper."

---

[2] In her affidavit in opposition to LINA's motion, Plaintiff claims, for the first time, that LINA improperly offset Plaintiff's benefits by $29,490 due to a workers compensation award that Plaintiff purportedly won in 1995 but never actually collected. (*See* Pl.'s Opp'n 6.) The court "will not consider these allegations in deciding this motion because it is inappropriate to consider claims not pleaded in the complaint in opposition to summary judgment." *Alali v. DeBara*, 2008 WL 4700431, at *3 n.6 (S.D.N.Y. Oct. 24, 2008).

*Gallo v. Prudential Residential Servs., Ltd. P'ship.*, 22 F. 3d 1219, 1224 (2d Cir. 1994) (citing *Dister v. Cont'l Group, Inc.*, 859 F. 2d 1108, 1114 (2d Cir. 1988)). The court is also mindful that "[a] document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation and internal quotation marks omitted). The court construes *pro se* pleadings "to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F. 3d 471, 474 (2d Cir. 2006) (emphasis omitted).

In the context of ERISA benefit claims the court must also determine the standard of review governing Plaintiff's denial of disability benefits under the Policy. *See Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101 (1989) (holding that "a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan."). Here, LINA correctly acknowledges that the Policy does not give LINA any discretionary authority. (*See* Def.'s Mem. 6-7.) Therefore, the court will review *de novo* Plaintiff's termination and will not "defer[] to [LINA's] evaluation of the evidence." *Locher v. Unum Life Ins. Co. of Am.*, 389 F. 3d 288, 296 (2d Cir. 2004).[3]

---

[3] LINA also asserts that the court should not review evidence outside of the administrative record. (*See* Def.'s Mem. 7.) Indeed, the Second Circuit Court of Appeals has held that, while "[t]he decision whether to consider evidence from outside the administrative record is within the discretion of the district court . . . the presumption is that judicial review is limited to the record in front of the claims administrator unless the district court finds good cause to consider additional evidence." *Muller v. First Unum Life Ins. Co.*, 341 F. 3d 119, 125 (2d Cir. 2003) (quotation marks omitted). LINA points to one piece of evidence Plaintiff submitted, a self-reported disability questionnaire (*See* Pl.'s Opp'n Ex. D.), from outside the administrative record that it argues the court should not consider. (*See* Def.'s Reply Mem. of Law, Dkt. Entry 33, at 3 n.1.) However, because there are still disputed factual issues, even if this court ignores

# DISCUSSION

## I. LINA's Termination of Plaintiff's Benefits

LINA argues that there is no dispute that Plaintiff failed to provide sufficient evidence that she was disabled under the Policy as of December 23, 2003, the date LINA terminated Plaintiff's benefits. (*See* Def.'s Mem. 7-11.) LINA contends that, despite repeated requests for more information, such as doctors' notes, from Plaintiff and her doctors, it only received a completed PFA form from Dr. Pradeshi and Plaintiff's self-reported disability questionnaire, which LINA argues was insufficient to determine that Plaintiff was still disabled. (*Id*. 8-9.) LINA dismisses the notes and records it received from Queens Village as irrelevant because they pertain to the period after Plaintiff's benefits were already terminated. (*Id*. 9-10.) Plaintiff responds that the information she submitted was sufficient to show that she was still disabled after eleven years of receiving disability benefits, particularly because the type of information Plaintiff submitted previously had been deemed adequate to show she was disabled. (Pl.'s Opp'n 3-4.) Plaintiff also asserts that she was not examined by LINA's in-house medical staff before they determined that she was no longer disabled, and that she does not "comprehend how [LINA's medical staff] can make such a determination when [they have] [n]ever met, examined or even talked with Plaintiff." (*Id*.)

The court holds that there is a genuine issue of material fact as to whether LINA breached the Policy by terminating Plaintiff's benefits. The ERISA statute provides a plan beneficiary with a federal right of action to recover benefits due under the beneficiary's plan. *See* 29 U.S.C.

---

the disability questionnaire, this court will assume, without deciding, for purposes of this motion, that its review is limited to the administrative record.

§ 1132(a)(1)(B). Under the Policy, Plaintiff is entitled to benefits when she is "Totally Disabled." The Policy provides that a beneficiary is Totally Disabled:

> if because of Injury or Sickness, he is unable to perform all the essential duties of his occupation. After Monthly Benefits have been payable for 24 months, an Employee will be considered Totally Disabled only if he cannot actively work in any "substantially gainful occupation" for which he is qualified or may reasonably become qualified by reason of his education, training or experience.

(Hayes Decl. Ex. D, LINA 23; Pl.'s Opp'n Ex. G, 5.)

After reviewing the record and making all appropriate inferences in Plaintiff's favor, the court cannot determine that, as a matter of law, the materials Plaintiff submitted are insufficient to show that she was "unable to perform all the essential duties of [her] occupation." LINA accepted that Plaintiff's diagnosed mental illnesses prevented her from working for over eleven years and it is unclear why the PFA form that Dr. Pradeshi completed and submitted to LINA at LINA's request (*See* Hayes Decl. Ex. D, LINA 141-44), was insufficient to demonstrate that Plaintiff was still disabled. The PFA form reports that Plaintiff suffered from "severe depression" and that, among other things, she was "unable to concentrate" and had "limited mobility," which appears to be similar to the diagnoses that caused LINA to pay her benefits since 1991. (*Id*. LINA 142.)

LINA strenuously argues that the assessment form is insufficient because it was not accompanied by Dr. Pradeshi's notes, but it is not clear why these notes hold the key to determining whether Plaintiff was disabled as of December 2003. LINA points to no provision of the Policy that mandates that it must obtain a doctor's notes or similar materials before it can deem a person disabled. Moreover, LINA seems to assume, erroneously, that the PFA form was the only material LINA possessed that was relevant in determining Plaintiff's ability to work as of 2003. The court is not convinced that LINA should have ignored the considerable

evidence submitted by Plaintiff or on her behalf throughout the previous eleven years, when LINA agreed that Plaintiff was disabled, and doctors reported that Plaintiff would likely never recover sufficiently to be able to work again. (*See, e.g.*, *id.* LINA 646-53; LINA 690-93.) The court also does not agree with LINA that the evidence Plaintiff submitted describing her mental condition in 2004 necessarily is irrelevant to determining whether she was disabled at the end of 2003. It is at least reasonable to infer that Plaintiff was disabled when her benefits were terminated in December 2003 if she was disabled from 1991 through 2002 and then in 2004 with the same mental health issues.

Accordingly, there are genuine issues of fact as to whether Plaintiff was disabled when LINA terminated her benefits in December 2003, which cannot be resolved on summary judgment.

## II. Timeliness of Plaintiff's Claim

LINA also contends that summary judgment is appropriate because this action is untimely under the terms of the Policy. (*See* Def.'s Mem. 11-15.) LINA asserts that the Policy bars Plaintiff from bringing a claim more than three years after her final administrative appeal was denied and, accordingly, this action, which was filed over four years after her final administrative appeal was denied, must be dismissed. (*Id.*)

Indeed, the version of the Policy LINA relies upon provides, in pertinent part:

> No action at law or in equity will be brought to recover on the policy until at least 60 days after proof of loss has been filed with the Insurance Company. No action will be brought at all unless brought within 3 years . . ., after the time within which proof of loss is required by the policy.

(Hayes Decl. Ex. D, LINA 44.) However, the version of the Policy that Plaintiff claims she received and upon which she was relying, while substantially similar to LINA's version, does not

have a three-year limitations clause.  (*See* Pl.'s Opp'n Ex. G.)  Thus, the court is faced with competing versions of the Policy and is asked to determine which version of the Policy should be accepted as governing Plaintiff's rights.

LINA's arguments for why the court should ignore Plaintiff's version of the Policy and accept LINA's version as the governing document are largely the same as the arguments it made in its motion to dismiss.  Because LINA, except as discussed below, has not submitted any new evidence or pointed to any new law demonstrating that the court must take LINA's word over Plaintiff's at this stage of the proceedings, the court rejects LINA's time-limitation argument for the same reasons the court denied LINA's motion to dismiss.  *See Prabhakar v. Life Ins. Co. of N. Am.*, 2011 WL 844901 (E.D.N.Y. Mar. 8, 2011).

The two new arguments LINA makes do not persuade this court that it can decide which version to accept at this stage of the proceedings.  First, LINA submits an affidavit from Richard Lodi, a Senior Operations Representative at LINA, affirming that he is familiar with the Policy in this action and that LINA's version contains the governing terms.  (*See* Aff. of Richard Lodi, Dkt. Entry 31-1, ¶¶ 3-4.)  However, Plaintiff insists in her affidavit that the version of the Policy she submits is the operative version of the Policy.  (*See* Pl.'s Opp'n 5.)  Therefore, the court is faced with determining whether Lodi or Plaintiff is more credible.  At this stage, the court cannot decide such a quintessential issue of fact.

Second, LINA contends that the "form numbers" on the bottom left of the Policy's pages reveal that the page containing the three-year limitation is "conveniently missing" from Plaintiff's version of the Policy.  (Def.'s Mem. 13.)  LINA argues that the form number for the page containing the limitations clause in LINA's version is LM6N32, while Plaintiff's copy goes from LM6N31 to LM6N33, with no form, LM6N32 in between.  (*Id.*)  However, the court

11

cannot determine at this juncture that the form numbers indicate that the page containing the limitations clause was missing from the Policy that Plaintiff received, or that the sequence of the form numbers would have alerted Plaintiff that the Policy she received was incomplete. The form numbers contain number gaps elsewhere in both versions (including in LINA's purportedly complete version) as, for example, both LINA's and Plaintiff's versions of the Policy jump from LM6N24 to LM6N27, with no form LM6N25 or LM6N26 in between. (*See* Hayes Decl. Ex. D, LINA 36-37; Pl.'s Opp'n Ex. G, 18-19.) Thus, it is not readily apparent whether Plaintiff's version of the Policy is missing the page with the limitations clause or that Plaintiff's Policy simply does not have the limitations provision.

Accordingly, because this court cannot decide as a matter of law whether to credit LINA's version of the Policy over Plaintiff's version, summary judgment is denied.

## CONCLUSION

After viewing the facts in the light most favorable to Plaintiff, there remain questions of fact as to whether Plaintiff was still disabled when her benefits were terminated and which version of the Policy, and, thus, whether the three-year limitations period applies to Plaintiff's claim. Accordingly, LINA's motion for summary judgment is denied in its entirety.

SO ORDERED.

Dated: Brooklyn, New York
      August 24, 2012

                                                /s/
                                    DORA L. IRIZARRY
                              United States District Judge